Having reviewed the competent evidence of record and having received the positions of the parties, the Full Commission modifies and affirms the Opinion and Award of the deputy commissioner.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in the pre-trial agreement as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act, and the employer-employee relationship existed between Leaseway Transportation and the deceased employee, Donald Sowers.
2. This case concerns an admittedly compensable injury by accident sustained by the employee Donald Sowers on January 30, 1972.
3. Defendant/employer's carrier on the risk at the time of Donald Sowers' accident on January 30, 1972, was CNA Insurance Company.
4. On March 29, 1972 the North Carolina Industrial Commission approved the parties' Form 21 Agreement for Compensation.
5. Defendants have paid compensation to Donald Sowers for total disability at the rate of $56.00 per week for the period beginning January 31, 1972, and continuing through on or about January 19, 2000, the date of Mr. Sowers' death.
6. "Commission Proceedings Leading to March 20, 2000 Hearing," consisting of 57 pages, was received into evidence as Stipulated Exhibit 1.
7. The medical records for Donald Sowers, consisting of 145 pages, were received into evidence as Stipulated Exhibit 2.
8. The transcript for the deposition of Dr. Travis Jackson taken on November 12, 1998, was received as evidence.
9. The issues for resolution in this hearing are as follows:
 (a) Is Plaintiff entitled to an increase of $2.80 or $3.92 in the weekly disability compensation benefits paid to Donald Sowers, retroactive to 1 July 1977 pursuant to N.C.G.S. § 97-29.1?
 (b) Is Plaintiff entitled to a late payment penalty of 10 percent plus interest for Defendants' failure to comply with the provisions of N.C.G.S. § 97-29.1?
 (c) Is Plaintiff entitled to be awarded attendant care services to be paid by Defendants under N.C.G.S. § 97-25 or § 97-29, and if so,
 (i) For what period, for how many hours each day, and at what hourly rate is Plaintiff entitled to receive attendant care services paid for by Defendants?
 (ii) Is Jean Sowers, entitled to be paid for providing attendant care services to Donald Sowers at the fair market value of those services, and,
 (iii)Is Jean Sowers entitled to be paid by Defendants at time and one-half for all attendant care services provided to Donald Sowers in excess of 40 hours in any workweek?
 (d) Are Defendants required to reimburse Plaintiff $300 for the replacement cost of Donald Sowers' eyeglasses which he broke during a grand mal seizure?
 ***********
Based upon the greater weight of the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Donald Sowers was born in High Point, N.C., in August 1935. He had a high school education. In 1953, Donald Sowers married Nancy Jean Grimes, who remained his wife on the date of his death. In 1954 and 1955, Donald Sowers served in the United States Marine Corps. The Sowers had two children, who are now adults.
2. Donald Sowers began working as a long distance truck driver for the Defendant-employer in 1970. Donald Sowers had no mental or physical impairments prior to January 30, 1972.
3. On 30 January 1972, Donald Sowers suffered serious injuries, including a brain injury, when the truck he was operating for his employer ran off the road and struck a tree. He remained hospitalized from the date of the accident until sometime in April 1972.
4. Upon his hospital admission, Donald Sowers was unconscious, his pupils were pinpoint, and he was bleeding from his left ear. Tests showed he sustained a fracture at the base of his skull. An EEG showed injuries to the frontal lobes on both sides of his brain. He developed respiratory insufficiency, which necessitated a tracheotomy. Mr. Sowers remained unresponsive to voice until February 13, 1972, when his level of consciousness improved. Due to the brain injuries, Donald Sowers developed seizures, for which he was placed on Dilantin.
5. On February 26, 1972, Donald Sowers came under the care of High Point Memorial Hospital and Dr. Hussey, a neurosurgeon. At that time Mr. Sowers was lethargic, disoriented and appeared demented. His gait was very unsteady, and he was unable to walk without assistance.
6. As a result of the January 30, 1972 accident, Donald Sowers suffered a severe post-traumatic brain injury, a major skull fracture with cerebrospinal fluid leak, and a seizure disorder. The injury to Mr. Sowers' brain affected his personality, reasoning power, short-term memory, emotional relationships, executive function, and speech.
7. Around April 1972, Donald Sowers was released from High Point Hospital and allowed to go home under the constant care and support of his wife, Jean Sowers, who also had the care of the Sowers' children, then ages 16 and 13.
8. Prior to January 1972, Mrs. Sowers was employed outside the home as a clerk at a local hotel. In early January 1972, prior to the accident, she had reduced her work hours to part-time so she could spend more time with her husband on days when he was not driving a truck. Following his accident, Mrs. Sowers quit her part-time job to care for her husband.
9. After his release from the hospital around April 1972, Donald Sowers continued to be unable to care for himself, and needed constant supervision. His wife attended to him and helped him regain his abilities to walk and talk. During much of the period from April 1972 until about September 1973, Mrs. Sowers devoted almost all of her time 24 hours a day to caring for her husband.
10. In January 1973, Donald Sowers underwent psychological testing which revealed he suffered from traumatic brain syndrome characterized by severe impairments in memory, reasoning and special areas, complicated by impaired judgment and post-traumatic seizures. By February 1973, Donald Sowers reached the end of his healing period. Due to the injuries he sustained, Mr. Sowers was unable to return to any gainful employment and remained totally permanently disabled until the date of his death.
11. As of September 26, 1973, as assessed by Dr. Hussey, Donald Sowers no longer needed constant care for his personal needs and did not require outside nursing services.
12. In the period 1975 through 1977, Mrs. Sowers went to school on a part-time basis at Guilford Tech, where she earned an associate degree in business. She returned to school to improve her opportunities for employment so she could support her family.
13. From 1977 through 1994, Mrs. Sowers worked during the daytime hours for various employers in and around Kernersville, N.C., where she and her husband lived. She kept in contact with her husband periodically throughout the day via the telephone. Mrs. Sowers' mother and trusted neighbors also watched and checked on her husband while she was at work. Mrs. Sowers usually made out a daily "to do list" for Donald Sowers to attempt to keep him busy while she was at work. The list included household tasks such as taking out trash, making the beds, and folding laundry.
14. In a July 19, 1990, letter to defendant carrier regarding this claim, the Chief Claims Examiner of the Industrial Commission advised that there might be a slight increase in benefits due under the provisions of N.C.G.S. § 97-29.1.
15. In the period after January 30, 1972, defendant carrier did not pay Donald Sowers disability compensation benefits greater than $56.00 per week, the maximum rate applicable under the statutes in 1972. Under N.C.G.S. § 97-29.1, defendants were required to increase Donald Sowers' weekly compensation payments by five percent or $3.92 effective July 1, 1977, and thus pay him benefits of $59.92 per week rather than $56.00.
16. Following the accident and continuing to his death, Donald Sowers suffered both petit mal and grand mal seizures. Beginning in September 1988, Mr. Sowers' seizures were treated primarily by Dr. Travis Jackson, a neurologist at Baptist Hospital. A list presented by Plaintiff as evidence at the hearing indicates that Mr. Sowers suffered an average of three to five grand mal seizures from 1995 through 1998. The number of grand mal seizures increased significantly to eight in 1999.
17. In March 1995, Mrs. Sowers chose to quit her job and stay at home with her husband. She felt her husband's condition had declined to the point that he needed constant supervision and that occasional telephone contact was not sufficient to monitor his condition. Based on the greater weight of the evidence, it was medically reasonable for Mrs. Sowers to take this, or other reasonable efforts, in order to provide attendant care for her husband on or after March 1995.
18. During 1997 and 1998, Donald Sowers' mental functioning began to deteriorate. His memory and judgment declined. His ability to manage himself alone was impaired similar to what is seen in an Alzheimer's patient. Around this time and continuing until his death, Mr. Sowers needed available 24-hour supervision.
19. During this time, Mr. Sowers continued to suffer occasional grand mal seizures and more frequent petit mal seizures, which were uncontrolled by medications. His sleep was disturbed and irregular, such that he would only sleep at most for three hours at a time, getting up during the night. His memory was impaired and he would forget to take his medication. He was a cigarette smoker, and his wife worried that he might drop a cigarette or a match and start a fire.
20. Mrs. Sowers continued to care for her husband around-the-clock. It was not reasonable to expect Mrs. Sowers to be available to care for Donald Sowers, as needed, during each 24 hour period of each day, 7 days per week. It was very difficult and taxing for Mrs. Sowers, especially at night, when she needed to rest. On August 6, 1998, plaintiff's counsel sent a letter to the Industrial Commission requesting an order that defendants pay Mrs. Sowers for the attendant care she was rendering to her husband. Such care was reasonably medically necessary, as established by Dr. Jackson's testimony, and defendants were responsible for providing the same.
21. During some of the 24 hours per day that Mrs. Sowers was available to care for her husband, she participated in normal household and spousal services for which she is not entitled to compensation under the workers compensation act. In addition, Mrs. Sowers slept and performed some personal activities during these periods.
22. Despite several requests from plaintiff, defendants failed to provide the Sowers with any of the needed home attendant care services until about January 5, 2000, when defendants employed Greensboro-based Hearthside Companion Care to provide a sitter to stay with Mr. Sowers each night from 11:00 p.m. until 7:00 a.m. while Mrs. Sowers slept. Defendants paid Hearthside approximately $14.00 per hour to provide sitter services each night until Donald Sowers' death.
23. In 1999, Mrs. Sowers had arranged for two individuals, Tim Mays and Maribeth Minetz, to provide sitter services for her husband on September 4 and October 10, respectively, from 11:00 p.m. until 7:00 a.m. so that she could get some relief from taking care of her husband. This care was reasonably necessary and defendants are required to pay for the services provided to the Sowers on these dates.
24. Mrs. Sowers was qualified to provide her husband with the attendant care services he needed. As testified by Dr. Jackson, Donald Sowers did not need skilled nursing care, but needed attendant care. Notwithstanding the fact that Mrs. Sowers was plaintiff's wife and a family member, she is entitled to be fairly and reasonably compensated by defendants for the attendant care services she provided to her husband to the date of his death.
25. The services needed by Donald Sowers were those services which could be provided by a home sitter or companion, or a chore worker. Mr. Sowers did not require skilled nursing care. A sitter provides companionship and monitoring for a client. A chore worker may perform additional tasks such as light housekeeping (vacuuming or dusting) or picking up groceries or taking the client to a doctor's visit. It was reasonably necessary to provide the level of care during the day which could be given by a chore worker. At night, the services provided by a sitter would be sufficient.
26. From June 1998 until early January 2000, home health services in the Winston-Salem area were charging from $12 to $13.75 per hour for the services of a chore worker. Of the amount charged, the amount actually paid to the worker ranged from $6.75 to $7.75 per hour. The services often paid both chore workers and sitters a differential for work done on the weekends or over a midnight shift such as 11 p.m. to 7 a.m. and paid overtime for hours over 40 per week.
27. From June 1998 until early January 2000, home health services in the Winston-Salem area were charging from $11 to $12.25 per hour for the services of a sitter. Of the amount charged, the amount actually paid to the sitter ranged from $6 to $7.50 per hour.
28. Nancy Jean Sowers is entitled to be paid by defendants for her services rendered to Donald Sowers from March 1, 1995, until the date of his death on January 19, 2000, based on the reasonable and usual amounts that would be paid to an experienced chore worker and a sitter by home health services market for the Winston-Salem, North Carolina, area, as expressed below.
29. Mrs. Sowers is entitled to payment for services rendered based upon the reasonable and usual amounts that would be paid to an experienced chore worker based upon the home health services market for the Winston-Salem, North Carolina area, as follows:
a. March 1, 1995 to December 31, 1996 at $5.75 per hour;
b. January 1, 1997 to December 31, 1998 at $6.75 per hour; and,
c. January 1, 1999 to January 19, 2000 at $7.75 per hour.
Such services should be based upon 12 hours a day, seven days per week for an 84-hour week, with overtime pay at the rate of time and a half (1.5) for each hour over forty (40) per week.
30. In addition to the amounts stated above, Mrs. Sowers is entitled to receive compensation for the employment of overnight sitters on September 4, 1999, and October 10, 1999. Defendants are responsible for payment for the services provided on these dates to Mrs. Sowers at the rate of $10.00 per hour for 8 hours per sitter, for a total payment of $160.00. Mrs. Sowers, as the contracting party, is responsible for payment to Tim Mays and Maribeth Minetz, each for 8 hours based upon an hourly rate of $10 per hour, such that each is owed a total of $80.
31. On December 30, 1999, Donald Sowers suffered a grand mal seizure and fell down. In the fall, he damaged his eyeglasses, which had to be replaced at a cost of approximately $300.00. Defendants are responsible for that expense.
32. On January 19, 2000, Donald Sowers died.
 ***********
Based upon the foregoing stipulations and findings of fact and conclusions of law, the Full Commission makes the following additional
 CONCLUSIONS OF LAW
1. On January 30, 1972, Donald Sowers sustained serious and permanent injuries, including a severe brain injury, as a result of a truck accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. As a result of this injury by accident, Donald Sowers was rendered totally permanently disabled and was entitled to be paid total disability compensation benefits, initially at the rate of $56.00 per week, the statutory maximum in effect at the time of his injury by accident. N.C.G.S. § 97-29.
3. Effective July 1, 1977, Donald Sowers became entitled to and defendants were responsible for paying an increase in Mr. Sowers' weekly total disability compensation benefits by the amount of $3.92 per week which would yield payments of $59.92 per week. N.C.G.S. § 97-29.1.
4. During the period from July 1, 1997, through the date of Donald Sowers death on January 19, 2000, defendants failed to timely pay correct weekly installments of disability compensation to Donald Sowers. Payments made did not reflect the increase of $3.92 per week under N.C.G.S. § 97-29.1. Therefore, the Estate of Donald Sowers is entitled to a ten percent late payment penalty on the amounts which were due and remained unpaid. N.C.G.S. § 97-18(g).
5. Defendants are responsible for payment of all expenses incurred on behalf of Donald Sowers for all reasonably necessary medical treatment, from the date of his accident and continuing to his death as may be related to his injuries sustained on January 30, 1972. This includes all medical care rendered for his petit mal and grand mal seizures, including the last seizure, which occurred on January 19, 2000. N.C.G.S. §§97-2(19), 97-25.
6. Defendants are responsible for payment for home attendant care services, which were reasonably necessary from March 1, 1995 and continuing to the date of Donald Sowers' death on January 19, 2000. Defendants are responsible for providing services consistent with those offered by a chore worker for 7 days per week, 12 hours a day during this period. Defendants failed to provide any such daytime attendant care services during this entire period. These services were provided by Donald Sowers' wife, Nancy Jean Sowers, who was a fit and appropriate person to provide such services. She is entitled to payment for such services rendered during this period, based upon the fees paid to home chore workers in the area at that time for 84 hours per week (7 days, 12 hours per day), as follows:
 a. From March 1, 1995 to December 31, 1996 at $5.75 per hour for the first forty hours per week and time and a half for the hours over forty, for the total payment of $609.50 per week;
 b. January 1, 1997, to December 31, 1998, at $6.75 per hour for the first forty hours and time and a half for the hours over forty, for a total payment of $715.50 per week; and,
 c. January 1, 1999, to January 19, 2000, at $7.75 for the first forty hours per week and time and a half for the hours over forty, for the total payment of $821.50 per week.
N.C.G.S. §§ 97-2(19), 97-25. London v. Snak Time Catering, Inc.,136 N.C. App. 473, 525 S.E.2d 203 (2000).
7. Defendants owe plaintiff, Nancy Jean Sowers, $160.00 for overnight attendant care provided to Mr. Sowers on September 4, 1999, and October 10, 1999. N.C.G.S. §§ 97-2(19), 97-25.
8. Defendants are responsible for the payment of all reasonable and necessary medical expenses, including but not limited to the payment of $300.00 for damaged glasses, to effect a cure or give relief to Mr. Sowers' condition up to and including the time of his death. N.C.G.S. §§ 97-2(19), 97-25.
9. The Plaintiff's attorney has rendered valuable legal services and is entitled to a reasonable attorney's fee of 25% based upon the recovery to Nancy Jean Sowers and the Estate of Donald Sowers under this Opinion and Award. N.C.G.S. § 97-90.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission makes the following
 AWARD
1. Defendants shall pay all medical expenses incurred on behalf of Donald Sowers due to his injuries sustained on January 30, 1972. Defendant carrier CNA is responsible for insuring that any outstanding bills are paid in a timely manner following the issuance of this Opinion.
2. Defendants shall pay to the Estate of Donald Sowers the amount of $300.00 as the cost of replacement eyeglasses which were damaged during Mr. Sowers' seizure on December 30, 1999.
3. Defendants shall pay to the Estate of Donald Sowers a lump sum based upon an increase in his compensation rate of $3.92 per week from July 1, 1977, through January 19, 2000, plus pay a 10 percent late payment penalty. This amount shall be paid in a lump sum, subject to the attorney's fee awarded below.
4. Defendants shall pay compensation to Nancy Jean Sowers for attendant care services she provided to Donald Sowers as follows:
a. From March 1, 1995, to December 31, 1996, at $609.50 per week;
b. January 1, 1997, to December 31, 1998, at $715.50 per week; and,
c. January 1, 1999, to January 19, 2000, at $ $821.50 per week.
This amount shall be paid in a lump sum, subject to the attorney's fee approved below.
5. Defendants shall pay Nancy Jean Sowers $160.00 for attendant care provided by others on September 4, 1999, and October 10, 1999.
6. A reasonable attorney's fee of twenty-five percent of the compensation awarded in paragraphs 3, 4 and 5 of this Opinion and Award is approved for plaintiff's counsel. Defendant shall withhold twenty-five percent of all compensation due the Estate of Donald Sowers and/or Nancy Jean Sowers in paragraphs 3, 4 and 5 of this Opinion and Award, and pay the same directly to Mr. Walden as his attorney's fee.
7. Defendants shall pay all costs, including the expert witness fee of $250.00 previously approved for Dr. Jackson.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER